IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALICIA MARIE GRIFFITH,<br>Plaintiff, | §<br>§<br>§ | |
| v. | § | NO. 3:13-CV-2124-BF |
| | § | |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br>Defendant. | §<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alicia Marie Griffith ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying her claim for supplemental security income under Title XVI of the Social Security Act (the "Act") pursuant to 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is REVERSED.

## Background

Plaintiff alleges that she is disabled due to a variety of ailments, including illiteracy, depression, bipolar disorder, difficulty with concentration, and body aches. *See* Tr. [D.E.13-3 at 57-58]. After her application for supplemental security income was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on May 14, 2012 in Dallas, Texas. *See id.* [D.E.13-3 at 42]. At the time of the hearing, Plaintiff was 40 years old. *See id.* [D.E.13-3 at 17]. Plaintiff has a 7th grade education and has worked in the past at Joe's Burgers. *See id.* [D.E. 13-3 at 56, 65]. Plaintiff has not engaged in substantial gainful activity since July 23, 2010. *See id.* [D.E. 13-3 at 53].

The ALJ found that Plaintiff was under a disability, but that a substance use disorder was a contributing factor material to the determination of disability, and therefore, Plaintiff has not been

disabled under the Social Security Act at any time from the date her application was filed through the date of the ALJ's decision. *See id.* [D.E.13-3 at 16]. The ALJ determined that Plaintiff suffered from the following severe impairments: bipolar syndrome, borderline intellectual functioning, and a polysubstance use disorder. *See id.* [D.E. 13-3 at 18]. The ALJ concluded that Plaintiff's impairments, including the substance use disorder, met sections 12.04, 12.05, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* [D.E. 13-3 at 21]. However, the ALJ concluded that absent Plaintiff's substance abuse, Plaintiff's impairments would not meet or medically equal any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* [D.E. 13-3 at 22]. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a modified range of medium work. *See id.* [D.E. 13-3 at 25]. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a hospital cleaner, a dishwasher, and a laundry worker - jobs that exist in significant numbers in the national economy. *See id.* [D.E. 13-3 at 25]. Plaintiff appealed that decision to the Appeals Council. *Id.* [D.E. 13-2 at 2]. The Council affirmed. *See id.* [D.E. 13-2 at 13]. Plaintiff then filed this action in federal district court.

## Legal Standards

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## Analysis

Plaintiff's appeal raises the following issues:

1. Whether the ALJ committed reversible error in rejecting opinions from Plaintiff's treating physician in favor of the opinions of a non-examining medical expert; and

2. Whether the ALJ committed reversible error in giving no indication of the weight given to two examining physicians and not providing good cause for presumably rejecting those those opinions.

Pl.'s Br. [D.E. 15 at 1].

Plaintiff contends that the ALJ committed reversible error by rejecting the opinion of her treating physician, Dr. Kristen Grable without good cause and failing to apply the 20 C.F.R. § 416.927(c) ("§ 416.927(c)") factors prior to giving her opinion no weight. *See id.* [D.E. 15 at 14]. Plaintiff contends that under *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000), the ALJ is required to provide an explicit analysis of the § 416.927(c) factors if the record contains no other

treating or examining opinions. *See id.* [D.E. 15 at 15]. Further, Plaintiff contends that the ALJ may not arbitrarily ignore uncontroverted medical evidence. *See id.* [D.E. 15 at 20]. Plaintiff contends that she was prejudiced by the ALJ's failure to properly consider and weigh Dr. Grables's treating opinions because Dr. Grable assessed Plaintiff as having limitations far in excess of those included in the ALJ's RFC findings. *See id.* [D.E. 15 at 15]. Specifically, Plaintiff points out that Dr. Grable opined that Plaintiff had a "substantial loss" in her ability to accept instructions and respond appropriately to criticism from supervisors, behave in an emotionally stable manner, cope with normal stress even in low-stress jobs, and finish a normal work-week without interruption from psychologically-based symptoms. *See id.* [D.E. 15 at 16]. Furthermore, Plaintiff points out that Dr. Grable determined that Plaintiff would miss about three days of work per month due to exacerbations of her symptoms. *See id.* [D.E. 15 at 16]. Plaintiff contends that none of the foregoing limitations were included in the ALJ's RFC finding and that the VE testified at the administrative hearing that the limitations assessed by Dr. Grable would prevent an individual from performing substantial gainful activity. *See id.* [D.E. 15 at 16]. Therefore, Plaintiff argues that the ALJ's failure to properly weigh Dr. Grable's treating opinions and give them controlling or great weight prejudiced Plaintiff's claim. *See id.* [D.E. 15 at 16-17].

The Commissioner argues that the ALJ conducted an extensive analysis of the Dr. Grable's opinions. *See* Def.'s Br. [D.E. 23 at 8]. With respect to Plaintiff's argument that the ALJ did not consider the factors set out in § 416.927(c), the Commissioner contends that the holding in *Newton* is limited to circumstances where the ALJ summarily rejects the opinions of a claimant's treating physician based on only the testimony of a non-specialty medical expert who had not examined the claimant, and where the record does not contain "competing first-hand medical evidence" that

supports the ALJ's decision. *See id.* [D.E. 23 at 8]. Further, the Commissioner argues that the ALJ's finding of substance use is not inconsistent with Dr. Grable's diagnosis of cannabis dependence and alcohol abuse and that nowhere in Dr. Grable's assessment does she opine that the assessed limitations would still be present if Plaintiff stopped substance abuse. *See id.* [D.E. 23 at 8-9]. In addition, the Commissioner argues that a failure to follow prescribed treatment precludes disability and that the medical staff at Metrocare noted in November of 2011 that Plaintiff had a history of substance abuse issues, was not attending groups, and used alcohol and marijuana two days before her appointment. *See id.* [D.E. 23 at 9].

In her reply, Plaintiff argues that while the ALJ summarized Dr. Grable's opinions, he offered no analysis of the weight afforded to those opinions, much less analyzed the *Newton* factors. *See* Reply [D.E. 24 at 2]. Plaintiff further points out that contrary to the Commissioner's assertion that Dr. Grable does not opine that Plaintiff's assessed limitations would still be present if Plaintiff stopped substance use, Dr. Grable explicitly found that Plaintiff's underlying mental impairments were severe enough to produce the limitations outlined in her opinion regardless of Plaintiff's drug or alcohol use. *See id.* [D.E. 24 at 2].

The Court finds that the ALJ committed legal error by failing to properly weigh Dr. Grable's opinions. While the ALJ contends that *Newton* is limited to circumstances where the ALJ summarily rejects the claimant's treating physician based only on the testimony of a non-specialty medical expert who did not examine the claimant and where the record does not contain "competing first-hand medical evidence" that supports the ALJ's decision, the ALJ here gave great weight to the opinion of a non-examining medical expert and did not explain why the opinions of Plaintiff's treating physician were not given similar weight. Further, as Plaintiff points out, contrary to the

6

Commissioner's argument, Dr. Grable specifically opined that Plaintiff's underlying mental impairments were severe enough to produce the limitations she outlined regardless of Plaintiff's alcohol and/or drug abuse. *See* Tr. [D.E. 13-10 at 33]. In addition, the ALJ committed legal error by failing to consider the § 416.927(c) factors set forth in the Commissioner's regulations for evaluating treating physician opinions.[1] *See Gittens v. Atrue*, 3:04-CV-2363-L, 2008 WL 631215, at *5 (N.D. Tex. Feb. 29, 2008) ("the ALJ had a duty to explain why these medical opinions from a treating physician were rejected and to conduct the analysis required by 20 C.F.R. § 404.1527(d)(2)."). The error here is not harmless because if the ALJ had given more weight to Dr. Grable's opinions, he may have found Plaintiff disabled. Thus, Plaintiff has shown prejudice from the ALJ's failure to properly weigh Dr. Grable's opinion. The undersigned finds that the ALJ's legal errors in

---

1. 20 C.F.R. § 416.927(c)(2) states in relevant part the following:

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

    (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

    (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a non-treating source.

considering the medical evidence will necessarily require reconsideration, not only of the medical evidence, but of the remaining issues.

## Conclusion

For the foregoing reasons, the final decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

SO ORDERED, this 23 day of September, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE